**UNITED STATES of America,**
**Appellee,**

v.

**Wayne L. MORGAN, Defendant–**
**Appellant.**

**No. 03–1151.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 14, 2003.

Decided: Aug. 19, 2004.

---

Deirdre A. McEvoy, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York, Andrew J. Ceresney, Assistant United States Attorney, on the brief), New York, N.Y., for appellee.

Norman Trabulus, Garden City, N.Y., for defendant-appellant.

Before: WALKER, Chief Judge, LEVAL and CABRANES, Circuit Judges.

LEVAL, Circuit Judge.

Wayne Morgan appeals from his conviction for being an alien found in the United States without permission after deportation, in violation of 8 U.S.C. § 1326. Morgan was found guilty in a bench trial conducted by the United States District Court for the Southern District of New York (Griesa, *J.*). Morgan contends his prosecution was time-barred because more than five years had passed between October 24, 1991, the date on which he was first

"found" by the United States Immigration and Naturalization Service ("INS"), and his indictment on February 7, 2001. *See* 18 U.S.C. § 3282. The district court rejected Morgan's contentions. We affirm.

## Background

Morgan was born in London, England on December 9, 1960, and entered the United States in 1973 as a visitor for pleasure. On May 16, 1988, Morgan was convicted in New York Supreme Court of attempted murder, second degree, and sentenced to an indeterminate term of two-and-a-half to seven-and-a-half years' imprisonment. The INS then commenced deportation proceedings and issued a warrant of deportation on March 1, 1991. The State of New York paroled Morgan to allow his deportation, which occurred on March 9, 1991.

Morgan illegally reentered the United States later that year. He was arrested on narcotics and firearms charges in the Bronx in New York City on October 23, 1991. According to an affidavit she later submitted, New York State Parole Officer Susan Sagarin, pursuant to customary procedures, would have "notified the INS [the next day] that [Morgan] had returned to the United States and was incarcerated at the Bronx House of Detention." (INS files show no record that the INS ever received such information, or any other notification of Morgan's arrest.) Officer Sagarin caused charges to be issued against Morgan for violation of the terms of his parole, but upon attempting to serve Morgan, discovered that he had been released on bail. On February 11, 1992,

Officer Sagarin requested the assistance of the Absconder Search Unit, which failed to locate Morgan, as he had not supplied the Department of Parole with his address. On September 1, 1992, a bench warrant issued for his arrest.

After his release from New York custody, Morgan left the United States. He reentered illegally in 1994 using a false name and a false birth certificate. On October 11, 1995, he was again arrested in New York City, this time for selling marijuana. Morgan gave the name "Anthony Smith" upon his arrest. On November 2, 1995, he was convicted on this charge and sentenced to thirty days in jail. The conviction and sentence listed the defendant's name as "Anthony Smith."

At some point prior to October 1997, the New York authorities identified "Anthony Smith" as Morgan and determined that he was a fugitive on the October 1991 gun and narcotics charge, as well as in violation of his March 1991 parole by virtue of his having reentered the United States. Morgan was then tried and convicted on the 1991 criminal charge and sentenced to six to twelve years in New York State prison.

On October 29, 1997, the New York State Department of Correctional Services notified the INS of Morgan's incarceration at the Ulster Correctional Facility. According to INS files, this report was the first notification the agency received of Morgan's presence in the United States following his 1991 deportation.[1] INS personnel interviewed Morgan on November 3, 1997. He admitted to having reentered the United States illegally in 1994. On

---

1. Morgan points to a statement by his own attorney in a state parole proceeding on January 18, 1996, to the effect that a previous hearing had been adjourned because "the Immigration Officer who was supposedly contacted was not available at that time," as evidence that he was "found in" the United States by the INS after the 1994 reentry no

later than the date of the hearing. Apart from the hearsay problems, even accepting as true that there was some contact between the INS and New York Parole officials about the need for an INS officer at a hearing, there was no showing that the INS was advised at that time of Morgan's identity.

February 7, 2001, within five years of the October 29, 1997, notification of the INS of Morgan's presence at the Ulster County facility, the present indictment issued charging Morgan with violation of § 1326 based on his having then been found illegally in the United States.

Morgan moved to dismiss the charge as untimely, asserting that he was "found in" the United States within the meaning of § 1326(a)(2) when Parole Officer Sagarin may have notified the INS of his Bronx arrest on October 24, 1991, and that § 3282 allowed no more than five years from that date for his prosecution on the offense of being "found." The district court denied the motion, based on its conclusion that the limitation period was tolled by reason of Morgan's flight from October 1991 until October 29, 1997, when the INS received notification from the New York State Department of Correctional Services of his detention at the Ulster County facility. *See* 18 U.S.C. § 3290. According to the district court, the exclusion of this time made the indictment timely within the five year limitation period, even assuming the offense date was October 24, 1991.

After a bench trial on stipulated facts, Morgan was found guilty of being "found in" the United States after deportation and sentenced to seventy-four months' imprisonment. Morgan appealed from the denial of his motion to dismiss and from his sentence.

## Discussion

I. *Statute of Limitations*

■ Section 1326 imposes criminal penalties on any alien who, having previously been deported from the United States, subsequently "enters, attempts to enter, or is at any time found in, the United States"

without prior express consent of the Attorney General. 8 U.S.C. § 1326(a)(2). The provision is subject to the five-year statute of limitations generally applicable to all non-capital federal offenses. 18 U.S.C. § 3282. Morgan contends that his five-year period of limitation runs from October 24, 1991, the date when he was first found by the INS to be in the United States following his first illegal reentry in 1991—that being the date when Parole Officer Sagarin may have notified the INS of Morgan's arrest in the Bronx. Because the indictment was not filed until nearly ten years later on February 7, 2001, Morgan argues, it should be dismissed.

■ The government relies on two alternative arguments in response. (i) Even assuming the 2001 indictment was not timely to prosecute him on the basis of his illegal presence in the United States in 1991, his departure and subsequent illegal reentry in 1994 permitted a new start to the statute of limitations clock for any prosecution based on his illegal presence following his 1994 reentry.[2] (ii) In addition, the statute was properly tolled on account of Morgan's flight and concealment. We agree with the government on the first prong and therefore need not address the second.

Morgan relies primarily on dictum in our opinion in *United States v. Rivera–Ventura*, 72 F.3d 277, 282 (2d Cir.1995). In *Rivera–Ventura* we affirmed the conviction for the same offense of a defendant who similarly contended his prosecution was barred as untimely. Rivera had been deported in 1986. In 1987, he reentered the United States illegally and was promptly "found" and arrested by the INS, which started new deportation pro-

---

**2.** Although the government apparently did not make this argument in the district court, we are entitled to affirm the judgment of the district court on any ground with support in

the record, even one raised for the first time on appeal. *See, e.g., Adirondack Transit Lines, Inc. v. United Transp. Union,* 305 F.3d 82, 88 (2d Cir.2002).

ceedings. While those proceedings were in progress, Rivera was released on bail with a view to allowing him to present an application for asylum. He gave the authorities a false address and absconded. Thereafter he successfully concealed his whereabouts by giving the police a false name when arrested on several occasions for driving while intoxicated. Finally in September 1994, Rivera was located again by the INS as the result of a new DWI arrest. He was indicted for violation of § 1326 in October 1994, more than five years after he was initially "found." The district court denied Rivera's motion to dismiss the prosecution for untimeliness. Its ruling was based on two theories. First, it viewed the offense under the "found in" prong of § 1326 as a continuing offense and reasoned that an alien who is discovered and absconds " 'should be deemed to have made the decision to commit the separate offense of being in the United States illegally through evasion of the authorities, a crime completed whenever he or she is subsequently found.' " *Id.* at 280 (emphasis removed) (quoting *United States v. Rivera–Ventura*, 885 F.Supp. 447, 450–51 (E.D.N.Y.1995)). Second, the district court found in the alternative that the allowable period of limitation should be tolled while Rivera was a fugitive.

On appeal, Rivera took the position that the district court had erred in both theories and that the conviction should accordingly be reversed and the prosecution dismissed. With respect to tolling, we rejected his argument and accordingly affirmed his conviction. In the course of the discussion, we expressed disagreement with the district court's alternative theory, explaining that if Congress had intended to create a continuing offense, it could have accomplished this with greater clarity than the phrase "is at any time found," by for example stating expressly that being "found" is deemed to be a continuing offense, or by using a phrase such as "remains in," or by simply omitting the word "found." *Id.* at 281–82.

Morgan relies on these dicta with respect to continuing offense, which, he contends, preclude the reasoning followed in this case by the district court.[3] Assuming we would adopt the reasoning of *Rivera–Ventura* in circumstances where our reversal of a conviction depended on it, the facts of this case are crucially different.

In *Rivera–Ventura* the defendant, after making his surreptitious illegal reentry into the United States and being found by the INS, remained in the United States for more than five years before being again found and prosecuted on the basis of this second episode of being found. Morgan, on the other hand, after surreptitiously entering the United States and being found in 1991, once again left the United States and subsequently made another surreptitious illegal reentry. The statutory construction Morgan advocates would mean that a previously deported alien, who illegally reentered the United States and was found but not prosecuted within five years, would be free to depart and make innumerable surreptitious reentries without fear of prosecution so long as he successfully concealed each reentry and remained undiscovered for a sufficient time.

---

**3.** Because our observations to the effect that being "found" is not a continuing offense had no role in our judgment, which was to affirm the conviction by reason of the tolling of the statute, this discussion cannot be characterized as any part of our holding in *Rivera–Ventura*. *See* Black's Law Dictionary 1100 (7th ed.1999) (defining "obiter dictum" as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)") (quoted in *California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 106 n. 19 (2d Cir.2004)).

We think it highly unlikely that Congress intended such a bizarre result. It is certainly not compelled by the statutory phrase "is at any time found," which rather strongly suggests the opposite conclusion.

Even if we ultimately adopt the reasoning discussed in *Rivera–Ventura* to the effect that an alien who reenters surreptitiously and, after being found, remains in the United States but is not prosecuted within five years is protected from prosecution for a second episode of being "found," this would not mean that the statute of limitations continues to bar prosecution if the alien leaves the United States and then embarks on a new criminal venture by making a new, surreptitious illegal reentry. Prosecution would not be barred if he were apprehended upon reentering and prosecuted for "enter[ing]" or "attempt[ing] to enter." 8 U.S.C. § 1326(a)(2). We see no reason why it should be barred if he is found only after entering and is prosecuted for so being "found." Indeed, the discussion in *Rivera–Ventura*, upon which Morgan relies, is not helpful to him as to such facts. The *Rivera–Ventura* discussion explained that the likely purpose of the "found in" clause was "to make it clear that if an alien illegally reenters ..., he is subject to prosecution even if the government does not discover him or the illegality of his entry until after the time to prosecute him for illegal entry has expired." *Rivera–Ventura*, 72 F.3d at 282. The discussion envisioned that one who enters illegally without being found will be subject to prosecution any time following that entry at the moment he is found. Application of that reasoning to Morgan's case suggests that, even if the limitation period had irrevocably passed so as to bar prosecution based on his previous illegal reentry in 1991, his new illegal reentry in 1994 once again exposed him to prosecution based on the new offense, whether the charge was directed against the new "entry" or the new incident of being "found" after the new entry.

We have considered the decisions of other circuits on related questions and have found none that is inconsistent with this reasoning. In other contexts, circuit courts have generally viewed the offense of being "found" as commencing with surreptitious reentry and continuing until the alien is discovered by immigration authorities. *See, e.g., United States v. Lopez–Flores,* 275 F.3d 661, 663 (7th Cir.2001) (holding that for purposes of determining whether offense of being found was committed while defendant was on parole, "the 'found in' offense is first committed at the time of the re-entry and continues to the time when the defendant is arrested for the offense"); *United States v. Pacheco–Medina,* 212 F.3d 1162, 1166 (9th Cir.2000) (finding that alien who had never been sufficiently free from official restraint to be deemed to have "entered" the United States could also not be prosecuted for being "found in" the United States, because "the concept of entry ... is embedded in the 'found in' offense").

■ We conclude that Morgan's second illegal reentry in 1994 gave rise to a new violation with a new limitation period, unaffected by the previous occasion of being found in the United States in 1991. This interpretation is entirely in keeping with the purpose of statutes of limitations. Statutes of limitations are designed "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past," as well as "encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 25 L.Ed.2d 156

(1970); *see also United States v. Podde,* 105 F.3d 813, 820 (2d Cir.1997). Here, where Morgan reentered the country, departed, and then reentered again, we see no reason why principles of repose should prevent timely prosecution for the second act of reentry—or the crime of being "found in" the United States that flows from the second reentry—simply because the statute of limitations may have run on the first act. The present prosecution punishes Morgan for that more recent act, not the act further in the past, and relies on fresh facts pertaining to the second act of being found in the United States following his reentry in 1994. *See Toussie,* 397 U.S. at 114–15, 90 S.Ct. 858. It is irrelevant that a statute of limitations may prevent the government from prosecuting the previous similar conduct. A failure on the part of the government to prosecute the first offense in a timely fashion neither augments nor diminishes Morgan's interests in a speedy prosecution on the second offense.

Because we conclude that Morgan's prosecution came within the time allowed by the statute of limitations, we have no need to consider the government's argument that it is entitled to tolling by reason of Morgan's flight.

## II. *Sentencing*

Morgan also challenges his sentence, arguing that the district court should not have treated his conviction for attempted murder as an aggravated felony for sentencing purposes because attempted murder was not an aggravated felony under the relevant immigration statute at the time he was convicted of attempted murder. Morgan argues that the sentence imposed by the district court therefore exceeds the applicable statutory maximum.

■ The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat.

3009–546, provides that its definition of aggravated felony will apply regardless when the felony conviction in question was entered. 8 U.S.C. § 1101(a)(43). Because Morgan was found after the September 30, 1996, effective date of IIRIRA, that statute's definition of aggravated felony applies. *United States v. Luna–Reynoso,* 258 F.3d 111, 113–16 (2d Cir.2001). Under these provisions, Morgan's conviction for attempted murder, for which he was sentenced to 30 to 90 months, is an aggravated felony. 8 U.S.C. § 1101(a)(43)(F); 18 U.S.C. § 16(a). The district court's sentence therefore is well within the applicable statutory maximum of twenty years. 8 U.S.C. § 1326(b)(2).

### Conclusion

The district court's judgment is AFFIRMED.