**UNITED STATES OF AMERICA,**

v.

**Ivor CONSTANTINE, Defendant.**

**No. 05 CR. 0666(VM).**

United States District Court,
S.D. New York.

Feb. 21, 2006.

Robert M. Baum, Federal Defenders of New York Inc. (NYC), New York, NY, for Defendant.

Joshua Klein, U.S. Attorney's Office, SDNY (St Andw's), New York, NY, for Plaintiff.

### SENTENCING DECISION

MARRERO, District Judge.

The defendant, Ivor Constantine ("Constantine"), entered a guilty plea before this Court on September 8, 2005 to a one count indictment charging illegal reentry of the United States after deportation subsequent to a conviction for the commission of an aggravated felony in violation of 8 U.S.C. § 1326. Constantine and the Government subsequently submitted letters to the Court detailing their respective positions regarding Constantine's sentencing. Constantine objects to the calculation of his criminal history points set forth in the Presentence Report. Constantine also argues that the Court should impose a sentence below the Sentencing Guidelines' range because a Guidelines sentence would result in an unwarranted sentencing disparity as a result of the existence of fast-track early disposition programs in some, but not all, districts. The Court addresses these issues below.

### I. BACKGROUND

As noted above, Constantine entered a guilty to a one-count indictment charging illegal reentry into the United States after deportation subsequent to a conviction for the commission of an aggravated felony. According to the Presentence Investiga-

tion Report, Constantine was deported on November 7, 1991 following a 1990 conviction for criminal sale of a controlled substance. The Presentence Investigation Report ("PSR") also states that Constantine was discovered to be in the United States illegally when he was arrested on March 18, 2005 for identity theft and unlawful use of a credit card. Constantine pled guilty to disorderly conduct in connection with the March 18, 2005 arrest.

Under the Sentencing Guidelines, Constantine's offense level amounts to 17. The Presentence Report calculates that his criminal history category is Category III. The Guidelines recommend a range of imprisonment for this offense level and criminal history category of 30 to 37 months.

### II. DISCUSSION

#### A. CRIMINAL HISTORY CALCULATION

Constantine objects to the calculation of criminal history points in the PSR. The report states that Constantine has a total of five criminal history points. Two criminal history points were added on the basis of Constantine's 1990 conviction, and one point on the basis of a 2002 conviction arising out of his 1990 arrest. Two additional points were assigned pursuant to Section 4A1.1(d) of the Sentencing Guidelines on the ground that Constantine committed the instant offense while subject to a 2002 sentence of conditional discharge.

Constantine asserts that the Probation Office incorrectly charged him with two points for his 1990 conviction because this conviction predated the instant offense by more than ten years. While Constantine concedes that he illegally reentered the United States in 1993 and remained in the country illegally from 1993 through his arrest in March 2005, he argues that the offense of illegal reentry is not a "continuing offense" and that the instant offense was "committed" in March 2005, when he

was found in the United States by immigration authorities. Accordingly, he argues that the 1990 conviction pre-dates the instant offense by more than ten years.

Constantine also challenges the two criminal history points he contends the PSR incorrectly added based on its finding that he committed the instant offense while subject to a 2002 sentence of conditional discharge. He argues that the sentence of conditional discharge expired in 2003, prior to his commission of the instant offense in March 2005.

Both of Constantine's arguments are premised on his assertion that the offense of illegal reentry is not a "continuing offense" and that the offense is "committed" on the date on which the defendant is found to be in the United States. However, case law in this Circuit does not support that proposition. To the contrary, the applicable case law holds that illegal reentry is a "continuing offense" and that the offense commences upon the alien's illegal reentry into the United States and continues until the alien is found by immigration authorities. *See United States v. Rivera–Ventura,* 72 F.3d 277 (2d Cir.1995).

Constantine cites *Rivera–Ventura* to support his argument that illegal reentry is not a "continuing offense." Constantine misconstrues the holding of that case. *Rivera–Ventura* dealt with the issue of when the statute of limitations begins to run for the crime of being "found in" the United States after illegally re-entering the United States in violation of 8 U.S.C. § 1326. *See id.* at 279. Addressing this question, the Second Circuit held that once an alien is discovered to be unlawfully in the United States by immigration authorities, the offense of being found in the United States after illegally re-entering is complete and does not constitute a continuing offense from that time forward. Thus, once the alien is found by officials, the statute of limitations begins to run.

*See id.* The case does not support the proposition that the crime of illegal reentry is not a "continuing offense" or that it is "committed" upon the date of the alien's discovery by immigration authorities. In fact, the *Rivera–Ventura* court notes that "to the extent that [8 U.S.C.] section 1326(a) makes it a crime to be 'found in' the United States, that provision is the practical equivalent of making unlawful 'entry' a continuing offense until at least such time as the alien is located." *Id.* at 282.

Furthermore, the Second Circuit stated in *United States v. Morgan* that *Rivera–Ventura* is consistent with other circuit courts that have viewed the offense of being "found in" the United States in violation 8 U.S.C. § 1326 as a continuing offense that commences upon reentry and continues until the alien is discovered by authorities. *See* 380 F.3d 698, 703 (2d Cir.2004) (*citing United States v. Lopez–Flores,* 275 F.3d 661, 663 (7th Cir.2001); *United States v. Pacheco–Medina,* 212 F.3d 1162, 1166 (9th Cir.2000)). This proposition is also supported by several other cases in this district. *See, e.g., United States v. Crown,* No. 95 Cr. 18, 1995 WL 733564, at *3 (S.D.N.Y. Dec.12, 1995); *United States v. Forrester,* No. 02 Cr. 0302, 2002 WL 1610940 (S.D.N.Y. July 22, 2002); and *United States v. Mancebo–Santiago,* 886 F.Supp. 372, 374–375 (S.D.N.Y. 1995).

Constantine also cites *United States v. Scott,* 387 F.3d 139 (2d Cir.2004), in support of his argument. In *Scott,* the defendant was convicted of possession of narcotics after illegally reentering the United States. While he was on probation in connection with the narcotics offense, Scott was indicted for being "found in" the United States after illegally reentering. Two points were added to Scott's criminal history pursuant to Section 4A1.1(d) because he was on probation at the time he was dis-

covered. Scott argued that Section 4A1.1(d) did not apply because his criminal conduct in connection with the crime of being illegally found in the United States was committed prior to his conviction in the narcotics case. The *Scott* court rejected the defendant's argument.

Constantine argues that *Scott* holding supports his argument that the crime of being "found in" the United States after illegal reentry is committed on the date on which the defendant is discovered, for purposes of Section 4A1.1(d). However, the *Scott* court did not address whether the offense is a continuing offense. Moreover, the Circuit Court's decision is entirely consistent with the proposition that the illegal reentry offense is a continuing offense.

■ In accordance with the authority set forth above, the Court rejects Constantine's assertion that illegal reentry is not a "continuing offense" and that the instant offense was committed exclusively in March, 2005, for purposes of applying Section 4A1.1(d). Accordingly, the Court rejects Constantine's assertion that his criminal history points were incorrectly calculated. The instant offense commenced upon Constantine's illegal reentry into the United States in October 1993 and continued until his arrest in March 2005. Therefore, the instant offense commenced approximately three years after Constantine's 1990 conviction and was committed while he was under a sentence of conditional discharge in 2002.

## B. *SENTENCING DISPARITIES ARISING OUT OF THE EXISTENCE OF FAST–TRACK PROGRAMS IN SOME DISTRICTS*

Constantine also argues that a sentence within the Guidelines range in this case would create an unwarranted sentencing disparity due to the existence of fast-track early disposition programs in some, but not all, districts. The Court recognizes that an ongoing debate exists among district courts throughout the country with regard to this issue. The Court considered the issue in detail in *United States v. Duran,* 399 F.Supp.2d 543 (S.D.N.Y.2005).

This Court noted in *Duran* that disparities created by the existence of fact-track programs are similar to disparities created by individual prosecutors' decision-making as to particular defendants, offenses, or geographical considerations. *See id.* at 546. Therefore, disparities created as a result of the existence of fast-track programs may not be "unwarranted".

Constantine's submission includes information regarding the maximum sentences Constantine would face in various fast-track districts. The Court notes that the average maximum sentence in the listed fast-track districts is approximately 24 months. Therefore, even if the Court adopted Constantine's argument, imposition of a sentence of substantially less than 24 months would not be warranted on the basis of concerns about unwarranted sentencing disparities arising out of the existence of fast-track programs.

As the Court noted in *Duran,* variations in sentencing may also arise *within* a district as a result of the division between judges who consider the double-counting and fast-track issues legitimate considerations for determining appropriate sentences and those who do not. Disparities based on this division between judges may be "unwarranted" because the disparities stem from an individual judge's conceptual stance on the underlying issue, rather than on characteristics of the particular offender or offense.

■ Constantine asserts that a conceptual split among judges in this district is creating unwarranted sentencing disparities within the district. He points to several recent illegal-reentry cases in this district in which non-guidelines sentences were imposed. *See, e.g., United States v.*

*Suendy Lival,* 05 Cr. 345, Sentencing Opinion, November 23, 2005. Over time, if a substantial number of such sentences were grounded on the fast-tract program disparities issue, it will tend to lower the average sentence for the offense of illegal reentry in this district. Arguably, the disparities arising from this conceptual split may provide some grounds for adjustment pursuant to 18 U.S.C. 3553(a)(6), which directs the Court to consider the need to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct" as a consideration in determining an appropriate sentence for a particular defendant. However, the Court is not persuaded that an adjustment is warranted at this time, given the lack of evidence that the number of cases in this district in which non-Guidelines sentences have been imposed based on concerns about disparities arising out of the existence of fast-track programs is sufficiently substantial.

## C. *POST–REENTRY CONDUCT*

Finally, the Court has considered Constantine's post-reentry conduct. Judge Rakoff has described three categories of illegal reentry defendants: those who reenter in order to commit additional crimes, those who reenter for some other purpose but who quickly resume their criminal conduct, and those who return for non-criminal purposes and do not commit additional crimes. *See United States v. Juan Reyes,* 05 Cr. 0362, Sent. Tr. at 5:9–17. In *Duran,* this Court recognized these considerations as potentially relevant in determining an appropriate sentence in illegal reentry cases. *See Duran,* 399 F.Supp.2d at 549. Under this formulation, Constantine falls closest to the third category. He did not return to the United States for the purpose of engaging in criminal conduct. Subsequent to his reentry, Constantine maintained steady employment, paid taxes, and contributed to the support of his family. He was arrested approximately twelve years after he reentered the country.

The Court also notes that Constantine will likely be detained for several months pending deportation proceedings following the completion of his sentence.

## III. *CONCLUSION*

■ Considering the grounds stated in 18 U.S.C. § 3553(a), this Court finds that a 27–month sentence of imprisonment is reasonable and appropriate, in that such a term is "sufficient, but not greater than necessary," to promote the proper objectives of sentencing. 18 U.S.C. § 3553(a). The Court further imposes a term of three years supervised release.

**SO ORDERED.**