IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 91-4677

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES J. PATERNOSTRO,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

(July 2, 1992)

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Charles J. Paternostro appeals from his second conviction for violating Corps of Engineers regulations by failing to abide by the terms of his Shoreline Use permit. Finding no error, we affirm.

I.

Paternostro's family bought property on Lake Texoma in 1965 and built a boathouse on the property. The boathouse was built pursuant to a permit issued in 1968 by the Corps of Engineers. In 1988, Paternostro replaced an old diving platform next to the boathouse with a three-tiered metal structure atop a platform. The structure, which Paternostro refers to as a "wet and wild" facility

contains several diving boards and three water slides.  It was not part of the approved plan for the boathouse and Paternostro did not obtain Corps of Engineers approval for constructing the new water slide platform.

On November 2 and again on November 16, 1989, the Army Corps of Engineers issued Paternostro Notices of Violation for failing to obtain proper approval for building the water slide platform. Paternostro was charged under 36 C.F.R. § 327.19(a) which makes it a violation to refuse or fail to comply with the conditions of any permit issued under Part 327.  Paragraph 17 of Paternostro's Lakeshore Use Permit issued under Part 327 provides that:

> If an inspection . . . reveals conditions which . . . deviate from the approved plans, such conditions will be corrected immediately by the owner upon receipt of notification.  No deviation or change from approved plans will be permitted without prior written approval of the Resource Manager.

After a bench trial, the district court convicted Paternostro for failing to receive approval for constructing the platform in violation of 36 C.F.R. § 327.19(a).  He was fined $400 under 36 C.F.R. § 327.25 and charged a $10 special assessment.  Paternostro did not appeal this conviction.

After his conviction, Paternostro applied for approval of the water slide platform by submitting plans and a letter from an engineer certifying that the platform was safe.  The Corps of Engineers rejected his application.  Paternostro did not appeal the rejection of his application.  The water slide platform remained in place beside the boathouse.  Two weeks after the first conviction became final, the Corps of Engineers issued another Notice of

2

Violation for failure to obtain approval for the water slide platform. The district court conducted a bench trial and again found Paternostro guilty. The court fined Paternostro $5,000 and sentenced him to five years probation. Paternostro appeals from this second conviction.

1. Double Jeopardy

The Double Jeopardy Clause protects against (1) a second prosecution after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). Paternostro's principal argument is that he is being punished multiple times for the single act of building these water slides in violation of his permit. We disagree. His crime as defined by the applicable regulations is the continuing offense of failure to abide by the terms of his Shoreline Use permit by maintaining the non-conforming water slide platform.

The Double Jeopardy Clause's protection against multiple punishments is "limited to assuring that the court does not exceed its legislative authorization." Brown v. Ohio, 432 U.S. 161, 165 (1977). Our inquiry then is whether the legislature has authorized the multiple punishments. The government relies upon the fact that the governing regulations provide that "[a]ny violation of any section of this part 327 shall constitute a separate violation for each calendar day in which it occurs." 36 C.F.R. § 327.1(g). Therefore, unlike the Court in Blockburger v. United States, 284 U.S. 299 (1932), and Brown v. Ohio, 432 U.S. 161 (1977), we need

3

not struggle to discern the intent to impose multiple punishments: the rulemaking body at issue here has explicitly stated its desire to treat each day of the continuing violation as a separate offense. The <u>Brown</u> court, which held that a defendant who was convicted of joy riding could not be retried for auto theft, stated that it "would have a different case if the Ohio Legislature had provided that joy riding is a separate offense for each day in which a motor vehicle is operated without the owner's consent." 432 U.S. at 169 n.8; <u>see</u> <u>United States v. Holloway</u>, 905 F.2d 895 (5th Cir. 1990) (where cumulative punishments are authorized for "even the same offense, the Double Jeopardy Clause of the Fifth Amendment is not offended.").

We agree that if Congress explicitly provided for these multiple punishments this would be an easy case under <u>Brown</u> and its progeny. However, this case is different from <u>Brown</u> in one important way which makes it more difficult to resolve: the explicit decision to create separate offenses on a daily basis was made by a regulatory agency, not by Congress. We have found no authority specifically answering the question whether regulatory intent should be treated as the equivalent of legislative intent for double jeopardy purposes. We note, however, that in another context, the Supreme Court has held that congressional intent may be found in federal regulations promulgated by an administrator in the exercise of delegated congressional authority. <u>Fidelity Federal Savings & Loan Ass'n v. De La Cuesta</u>, 102 S.Ct 3014, 3022-

23 (1982) (court looks to regulations in determining whether Congress intended to pre-empt state law).

In determining whether the legislative intent was to provide for cumulative punishments, we believe that it is consistent with the purposes of the Double Jeopardy Clause to attribute to Congress the intent embodied in these regulations. The double jeopardy guarantee "serves principally as a restraint on courts and prosecutors." Brown v. Ohio, 432 U.S. at 165. When the Corps of Engineers enacts regulations it is not acting as either court or prosecutor; its role is that of a quasi-legislative rulemaker. We believe that the "legislative intent" referred to in the Supreme Court's double jeopardy analysis in Brown and Grady includes rulemaking pursuant to a valid grant of congressional authority. Paternostro has not asserted that the Corps of Engineers acted outside its authority as delegated by Congress in dividing this continuing offense into daily offenses. See 16 U.S.C. § 460d. Our task of statutory interpretation is at an end once we determine that cumulative punishment is specifically authorized; we need not determine whether these offenses are the same under the Blockburger analysis. Missouri v. Hunter, 103 S.Ct. 673, 679 (1983). Because we find that Congress has authorized cumulative punishments, there is no double jeopardy violation in Paternostro's punishment.

Paternostro also asserts that his prosecution violates the Double Jeopardy Clause because he has been subjected to the harassment of multiple prosecutions. United States v. Houltin, 566 F.2d 1027, 1033 (5th Cir. 1978) (Double Jeopardy Clause protects

5

defendant from harassing multiple prosecutions). We need not address whether repeated prosecutions for daily offenses may impinge upon the Double Jeopardy Clause in some circumstances because Paternostro has not been subjected to harassing multiple prosecutions.

Where the defendant continues engaging in an offense after an original conviction and sentence become final, he cannot rely upon the Double Jeopardy Clause to prevent a later prosecution and conviction. Unlike the defendant in Grady v. Corbin, 110 S.Ct. 2084 (1990), Paternostro is not being prosecuted for acts committed in the past but for his conduct continuing after the first prosecution. As the Supreme Court has said "one who insists that the music stop and the piper be paid at a particular point must at least have stopped dancing himself before he may seek such an accounting." Garrett v. United States, 105 S.Ct. 2407, 2417 (1985); United States v. Pungitore, 910 F.2d 1084, 1111 (3d Cir. 1990).

In this case, Paternostro has not stopped dancing. His prosecution for his continuing refusal to abide by the terms of his Shoreline Use permit is not barred by double jeopardy because the government could not have brought this case in the earlier prosecution. See Diaz v. United States, 223 U.S. 442 (1912) (double jeopardy does not bar prosecution for murder after conviction of assault where victim did not die until after first trial). Paternostro was prosecuted once for his violations in November 1989. The Corps did not take any further prosecutorial

6

action until that conviction became final and then relied only upon violations occurring after that date. The Corps could not have tried Paternostro for these separate violations at his first trial because they had not yet occurred. Paying his $400 fine in the first case does not immunize Paternostro from prosecution for his continued willful violation of the Corps of Engineers regulations. We conclude that Paternostro's prosecution did not violate the Double Jeopardy Clause.

2. The _Petite_ policy

Paternostro contends that the government failed to follow its dual prosecution policy, known as the _Petite_ policy, by prosecuting him for a second time. _Petite v. United States_, 361 U.S. 531 (1960). First, we note that the _Petite_ policy applies to federal prosecutions following state prosecutions for the same offense, not multiple prosecutions for a continuing federal offense. In any event, "the _Petite_ policy is an internal rule of the Justice Department; criminal defendants may not invoke it to bar prosecution by the federal government." _United States v. Harrison_, 918 F.2d 469, 475 (5th Cir. 1990). Paternostro cannot rely upon this policy to assert an error in his prosecution.

3. Exhaustion of Administrative Remedies

Paternostro asserts that the government should not have prosecuted him because the Corps had adequate administrative remedies against him for violating his Lakeshore Use Permit. Paternostro confuses the scope and purposes of the exhaustion of administrative remedies doctrine. This doctrine is designed to

prevent judicial interference in administrative procedures before the agency has been allowed to complete its own decision and review processes.  Patsy v. Florida Int'l University, 634 F.2d 900, 903 (5th Cir. 1981).  Where the agency itself decides to pursue a judicial remedy, the exhaustion of remedies doctrine is simply not applicable.  Although pursuing the revocation of Paternostro's permit before criminally prosecuting him might have been the wiser course, the Corps of Engineers is not required to do so.

4.  Right to Counsel

Paternostro asserts that the district court violated his Sixth Amendment right to counsel by rejecting his request for a continuance in order to allow him to obtain legal counsel.  The Sixth Amendment requires only that a defendant be given a fair or reasonable opportunity to obtain particular counsel; it does not guarantee an absolute right to the counsel of one's choice.  United States v. Mitchell, 777 F.2d 248 (5th Cir. 1985).

Paternostro is an attorney and represented himself at his first trial.  He was planning to represent himself at the second trial as well, but apparently changed his mind when the government filed its "Brief in Support of Sentencing Alternatives" asserting its view of the possible sentences available to the district court. Paternostro asserts that the government's decision to argue for a $5,000 fine and long-term probation made it necessary for him to retain an attorney with experience in "the federal legal arena."

Assuming that Paternostro's need for an attorney increased as he argues, he has failed to show that the district court's denial

of a continuance prevented him from obtaining one. The government filed its brief twenty days before the trial date. Given the simplicity of the trial in this case, Paternostro had sufficient time to retain an attorney in time to prepare for trial. The fact that the particular attorney he wished to hire was unavailable does not constitute a violation of his Sixth Amendment rights where he had sufficient opportunity to obtain other counsel. Mitchell, 777 F.2d at 256-57. Determining whether to grant a continuance allowing the defendant to obtain the counsel of his choice "requires a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice." Gandy v. State of Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978). The district court did not abuse its discretion by denying Paternostro's motion for a continuance under the circumstances of this case.

5. Right to a jury trial

Paternostro next asserts that the district court's denial of his request for a jury trial violated his Sixth Amendment rights. The Sixth Amendment right to a jury trial is triggered only by prosecution for "serious" crimes as opposed to "petty" crimes. Blanton v. North Las Vegas, 109 S.Ct. 1289 (1989). The most relevant criterion for determining the seriousness of a crime is the maximum authorized penalty. Id. Paternostro concedes that the maximum sentence for violation of 36 C.F.R. § 327.20 is six months imprisonment and a $5,000 fine.

9

For Sixth Amendment purposes, we presume that offenses carrying a maximum prison term of six months or less are petty offenses. Blanton, 109 S.Ct. at 1293. A defendant in such circumstances must demonstrate that "any additional statutory penalties viewed in conjunction with the maximum authorized period of incarceration are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." Id. The additional penalties of a $5,000 fine and extended probationary period imposed under 18 U.S.C. § 3571(b) are not so severe as to lead us to conclude that Congress intended to make failure to abide by the terms of a Shoreline Use permit a serious offense.

Paternostro argues that because under the government's theory he committed a violation for every day the water slide structure remained intact, his potential punishment was many times the six month maximum. In analyzing the seriousness of the offense under Blanton, we look only at the penalty to which the defendant is subject to for the crimes actually charged in that proceeding. Blanton, 109 S.Ct. at 1294 (refusing to consider fact that DUI offender would face more serious penalties for repeat offenses). Regardless of what sentences Paternostro was exposed to in his first trial and what he might be subject to in the future, the offense he was being tried for had a maximum penalty of six months and therefore he was not entitled to a jury trial.

6. Legal defenses and sufficiency of the evidence

Finally, Paternostro asserts that the district court erred in failing to credit his defenses to the violation of the regulations and that the evidence was insufficient to support his conviction. The defenses not addressed elsewhere in the opinion are (1) approval of the Corps of Engineers was unnecessary because the plans on file with the Corps show a diving board on the boathouse; (2) the Corps had actual notice that he had had a water slide structure of some sort on the boathouse since 1976; (3) the Corps is estopped by its letter renewing the boathouse permit in 1989 and stating that there were "no deficiencies noted," (4) Paternostro had submitted plans for approval prior to being charged with the third violation; (5) the Corps had the authority to grant Paternostro a permit for the water slide as a "private recreational facility," (6) approval of the Corps was unnecessary because he submitted the plans with a letter from an engineer certifying the structure's safety; and (7) other structures on the lake are allowed to have water slides and more elaborate boathouse facilities. None of these arguments has merit. Whether the Corps could or should have issued Paternostro a permit for his water slide platform is irrelevant to the issue of whether he varied his boathouse without approval. Paternostro could have challenged the denial of his application but chose not to do so. As to the sufficiency of the evidence, we find that the evidence in the record fully supports the district court's verdict.

The judgment of the district court is AFFIRMED.