Opinion by Judge WATFORD.
Dissent by Judge FITZGERALD.
OPINION
WATFORD, Circuit Judge:
Alvaro Sanchez-Aguilar is a citizen of Mexico who initially came to the United States as a child with his mother. Although many of his immediate family members lawfully reside in the United States, he does not, and the federal government has formally removed him to Mexico on five occasions. Following his last removal, in 2010, he returned to the United States without first obtaining permission to do so, as required by law.
In May 2011, the government charged him with being an alien who, after having been removed in 1998, 2005, 2006, 2007, and 2010, was “found in” the United States in violation of 8 U.S.C. § 1326. A jury convicted Sanchez-Aguilar of that offense, and the district court sentenced him to the applicable statutory maximum of two years in prison.
Sanchez-Aguilar raises two challenges to his conviction. The first, which he incorrectly frames as a challenge to the sufficiency of the evidence, requires a brief summary of the procedural history of the case.
*1110 Before trial, Sanehez-Aguilar moved to dismiss the indictment on the ground that each of his prior removal orders had been issued in violation of his due process rights. A removal order may not be used as the predicate for a § 1326 prosecution if the proceeding that produced the order “violated the alien’s due process rights and the alien suffered prejudice as a result.” United States v. Barajas-Alvarado, 655 F.3d 1077, 1085 (9th Cir.2011) (internal quotation marks and citation omitted). The government conceded that four of Sanchez-Aguilar’s removal orders were invalid under this standard. But the government argued that Sanchez-Aguilar’s due process rights had not been violated in connection with the 2006 removal order, and the district court ultimately agreed. The court accordingly denied Sanchez-Aguilar’s motion to dismiss the indictment, although it rejected the government’s request to introduce evidence relating to the 1998, 2005, 2007, and 2010 removal orders under Federal Rule of Evidence 404(b). At trial, the jury heard evidence that Sanehez-Aguilar had been removed from the United States only in 2006.
The source of controversy on appeal is this: Sanehez-Aguilar had already been convicted, in 2009, of violating § 1326 based on the same 2006 removal order that forms the predicate for the conviction in this case. There is nothing inherently wrong with that; under the “found in” prong of § 1326, the same removal order can serve as the basis for more than one conviction, so long as the government “prove[s] that the defendant ha[s] been outside the United States after each conviction” before he is again prosecuted for violating § 1326. United States v. MezaVillarello, 602 F.2d 209, 211 (9th Cir.1979) (per curiam). We adopted that rule, grounded in double jeopardy concerns, to avoid the specter of the government obtaining one § 1326 conviction and then, after releasing the defendant from prison, arresting him at the prison gates for again being “found in” the United States. Id.
In this case, the government did not prove at trial that Sanehez-Aguilar had been outside the United States between his 2009 conviction and his arrest for the offense at issue here. But in fact he had been. It is undisputed that, upon completing his sentence for the 2009 conviction, Sanehez-Aguilar was immediately removed to Mexico on September 3, 2010. The jury never learned of that fact because the district court excluded any evidence relating to the 2010 removal order.
The question we must resolve is whether the government’s failure to prove at trial that Sanehez-Aguilar left the United States after his 2009 conviction is of any significance. Sanehez-Aguilar contends the government’s failure to prove that fact means there was insufficient evidence to support his conviction in this case. We view the matter differently. Proof of Sanchez-Aguilar’s posb-2009 departure from the United States, although necessary to avoid double jeopardy concerns, was not an element of the § 1326 offense submitted to the jury. See United States v. Florez, 447 F.3d 145, 150 (2d Cir.2006) (proof of flight from justice necessary to avoid statute-of-limitations dismissal “did not thereby become an element of the charged narcotics offenses”). To obtain a conviction, the government needed to prove only that Sanehez-Aguilar had been removed from the United States in 2006, and that at some point thereafter he knowingly and voluntarily returned to the United States without first obtaining the requisite permission to do so. See United States v. Romo-Romo, 246 F.3d 1272, 1276 (9th Cir.2001). The government introduced ample proof of those statutory elements at trial, and Sanehez-Aguilar does not contend otherwise. Thus, the govern *1111 ment introduced sufficient evidence -to sustain his conviction.
That leaves the question whether Sanchez-Aguilar’s conviction violates his right not to “be subject for the same of-fence to be twice put in jeopardy of life or limb.” U.S. Const, amend. V. Since Sanchez-Aguilar never raised a double jeopardy defense in the district court, we review the record only for plain error. See Fed. R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 782, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We find none. Under Meza-Villarello, in order to ensure that his conviction in this case is for a different § 1326 “offence,” the government had to show that Sanchez-Aguilar left the United States after his 2009 conviction. 602 F.2d at 211. But that fact was undisputed below and is not disputed on appeal. Indeed, in a pre-trial brief, SaneheznAgui-lar conceded that he had been removed from the United States in September 2010. So there was no error, much less plain error, in the district court’s refusal to vacate Sanchez-Aguilar’s conviction based on a double jeopardy defense he never raised.
We reject Sanchez-Aguilar’s contention that, in analyzing his double jeopardy defense, we are limited to reviewing the evidence presented to the jury. That contention cannot be squared with precedent holding that double jeopardy is a question of law that must be resolved by the court, not the jury, even when the defense turns on disputed factual issues. See United States v. Persico, 832 F.2d 705, 712 (2d Cir.1987); United States v. MacDougall, 790 F.2d 1135, 1142-43 (4th Cir.1986). When the defense must be addressed after trial and turns on disputed facts, district courts are empowered to hold post-trial evidentiary hearings to make the necessary, factual determinations. See Persico, 832 F.2d at 712; United States v. Young, 503 F.2d 1072, 1076-77 & n. 17 (3d Cir.1974). If courts were limited to reviewing the evidence introduced at trial, as Sanchez-Aguilar urges, post-trial evidentiary hearings to address double jeopardy issues would be neither needed nor authorized.[1]
Sanchez-Aguilar’s second challenge to his conviction is a collateral attack on the validity of the 2006 removal order. That attack can succeed only if Sanchez-Aguilar shows that “the entry of- the order' was fundamentally unfair.” 8 U.S.C. § 1326(d)(3). As alluded to earlier, this standard requires the defendant to establish both a due process violation in the underlying removal proceeding and resulting prejudice. Barajas-Alvarado, 655 F.3d at 1085; United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir.2004). We need not analyze prejudice because Sanchez-Aguilar has not established a due process violation.
Sanchez-Aguilar contends that his due process .rights were violated because the immigration officer who' interviewed him at the border did not tell him that he could *1112 request withdrawal of his application for admission, a form of discretionary relief which, if granted, would have allowed Sanchez-Aguilar to leave the United States immediately without a removal order being entered. See 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 235.4. In the context of removal proceedings for aliens who have already been admitted into the United States, we have held that due process requires the immigration judge to inform such aliens of potentially available avenues of relief. See United States v. Arce-Hemandez, 163 F.3d 559, 563 (9th Cir.1998). But Sanchez-Aguilar’s 2006 removal order was the product of an expedited removal proceeding authorized under 8 U.S.C. § 1225(b)(1). Such proceedings are generally reserved for “arriving aliens” who, like Sanchez-Aguilar at the time, are seeking admission into the United States at the border. See 8 U.S.C. § 1225(b)(l)(A)(i); 8 C.F.R. § 235.3(b)(l)(i).
Non-admitted aliens like Sanchez-Aguilar who seek entry at the border “are entitled only to whatever process Congress provides.” Barajas-Alvarado, 655 F.3d at 1088; see United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950). The statute and regulation governing expedited removal proceedings, 8 U.S.C. § 1225(b)(1) and 8 C.F.R. § 235.3, set forth the procedural rights to which such aliens are entitled, but the right to be informed of potentially available avenues of relief from removal is not among them. As a result, the immigration officer’s failure to inform Sanchez-Aguilar of his ability to request withdrawal of his application for admission did not violate his due process rights. See United States v. Lopez-Vasquez, 227 F.3d 476, 479-80, 484-85 (5th Cir.2000).
AFFIRMED.

. In Meza-Villarello, we noted that no double jeopardy concerns were raised because “the government's evidence was sufficient to permit the jury to find” that the defendant had left the United States after his prior § 1326 conviction. 602 F.2d at 211. Contrary to the dissent’s suggestion, we did not purport to hold that the jury was required to make that finding to sustain a valid second conviction. Doing so would have upended settled law holding that a fact needed to establish separate offenses for double jeopardy purposes must be proved to the court. See United States v. Bendis, 681 F.2d 561, 564 (9th Cir.1981); see also United States v. Ragins, 840 F.2d 1184, 1192 (4th Cir.1988). Instead, we merely observed that, given the record at trial (which included evidence of the prior conviction and undisputed evidence of a post-conviction departure), the jury actually convicted the defendant of a distinct second offense, and thus there could be no conceivable double jeopardy violation.