**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 24 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50104 |
| Plaintiff - Appellee, | D.C. No. 3:12-cr-00245-AJB-1 |
| v. | |
| OSCAR BAYARDO-GARCIA, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted May 15, 2014
Pasadena, California

Before: PREGERSON, REINHARDT, and NGUYEN, Circuit Judges.

Oscar Bayardo-Garcia was charged with one count of being a deportable

alien found in the United States under 8 U.S.C. § 1326. He moved to dismiss the

indictment under 8 U.S.C. § 1326(d), and, after the court denied the motion, he

pleaded guilty to the charge but reserved the right to appeal the denial of his

---

   *    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

motion to dismiss. We review de novo the denial of a motion to dismiss an indictment under 8 U.S.C. § 1326. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004).

1.      The basis for Bayardo-Garcia's indictment under § 1326 is an order of removal issued in 1999, when he was subjected to expedited removal proceedings. "A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* at 1048. To sustain a collateral attack on the removal order, Bayardo-Garcia must demonstrate that "the proceeding that resulted in the expedited removal was fundamentally unfair in that the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011) (citation and internal quotation marks omitted); 8 U.S.C. § 1326(d)(3).[1]

2.      "Non-admitted aliens . . . who seek entry at the border are entitled only to whatever process Congress provides." *United States v. Sanchez-Aguilar*, 719 F.3d

_____

[1]Because administrative and judicial review of an expedited removal are precluded by statute, an individual making a collateral attack on an underlying expedited removal is excused from meeting the requirements of 8 U.S.C. § 1326(d)(1) and (2). *Barajas-Alvarado*, 655 F.3d at 1082.

2

1108, 1112 (9th Cir. 2013) (citation and internal quotation marks omitted). However, "[t]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." *United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014) (quoting *Barajas-Alvarado*, 655 F.3d at 1084). The violation of immigration regulations may invalidate an underlying deportation if "the regulation itself serves a purpose of benefit to the alien" and "if the violation prejudiced the interests of the alien which were protected by the regulation." *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) (citations and internal quotation marks omitted). The regulation governing expedited removal procedures, 8 C.F.R. § 1235.3(b)(2)(i), requires, among other things, that "the examining immigration officer shall read (or have read) to the alien all information contained on Form I-867A." The I-867 Form contains, among other things, information about the nature and consequences of the expedited removal proceedings, namely, that removal may result in being "barred from entry for a period of five years or longer."

3. The district court held an evidentiary hearing to determine whether the required procedures were followed and found that they were. This was clear error. Although an immigration officer testified that the procedure was to show a video advisal that covered the information contained on Form I-867A, each time he was asked a specific question as to whether certain portions of the text on Form I-867A

3

were contained in the video, he could not recall. Neither the video nor a transcript of the video was entered into evidence. This is insufficient to show that the process Bayardo-Garcia received complied with the requirements of the regulation.

4.    The regulations governing the expedited removal procedures are clearly intended to benefit the alien, and the failure to comply with the regulations adversely affected Bayardo-Garcia's interests, resulting in a due process violation. *Ramos*, 623 F.3d at 683. The failure to read Bayardo-Garcia portions of the I-867A form deprived him of the knowledge that an expedited removal could bar him for five years. Lacking this critical information, he failed to inquire about the available alternatives to expedited removal that would allow him to avoid the five-year bar. Although an immigration officer has no affirmative duty to inform an applicant that he may ask to withdraw his application for admission, *Sanchez-Aguilar*, 719 F.3d at 1112, he does have the responsibility to be honest and fair in his dealings during the admission process. *See* INS Inspector's Field Manual, § 2.4, *available at* Westlaw FIM–INSFMAN 2.4. Thus, had Bayardo-Garcia asked the immigration officer about alternatives to expedited removal, the officer would have been required to disclose them, including the possibility of withdrawing an application for admission.

4

5. Here, had Bayardo-Garcia been informed of the drastic consequences of expedited removal, as the regulation provides he must be, he likely would have requested that his application be withdrawn. Moreover, there was a high likelihood that such a request would have been granted; around the time of his expedited removal, over 60% of applicants in Bayardo-Garcia's position were allowed to withdraw their applications. Congressional Research Service, Immigration Policy on Expedited Removal of Aliens, 9 (Sept. 30, 2005) (available at http://assets.opencrs.com/rpts/RL33109_20050930.pdf). While this statistic is not determinative, *Barajas-Alvarado*, 655 F.3d at 1091, it enhances an already "'plausible showing' that the specific facts of his case would warrant a favorable exercise of discretion."[2] *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999).

6. Bayardo-Garcia has made a "plausible showing" that an immigration officer would have granted a request to withdraw his application for admission. *Id.* The

---

[2]Bayardo-Garcia could also show prejudice under *Matter of Gutierrez*, 19 I. & N. Dec. 562, 564-65 (BIA 1988), which instructs immigration officers to decide whether to allow withdrawal by asking whether "factors directly relating to the issue of his admissibility indicate that granting withdrawal would be in the interest of justice." Bayardo-Garcia had a visa immediately available to him through his U.S. citizen wife, which weighs strongly in favor of granting withdrawal. "The immediate possibility of obtaining immigration relief may directly relate to the issue of an alien's inadmissibility." *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1022 (9th Cir. 2011).

grant of such relief is discretionary. 8 U.S.C. § 1225(a)(4). Immigration officers are guided in their exercise of discretion by the factors of the INS Inspector's Field Manual, § 17.2(a), *available at* Westlaw FIM–INSFMAN 17.2. *Barajas-Alvarado*, 655 F.3d at 1090. Those factors are: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Id.* (quoting the Field Manual). Many of these factors weigh in favor of exercising discretion in Bayardo-Garcia's favor. Unlike Barajas-Alvarado, Bayardo-Garcia had no previous findings of inadmissibility. He had a visa immediately available to him[3] through his United States citizen wife, who was the mother of his eight United States citizen children. Also unlike Barajas-Alvarado, Bayardo-Garcia did not present false documents at the border; he stated a false place of birth, but quickly recanted. This is not "obvious, deliberate fraud." *Id.* Bayardo-Garcia has thus shown "that it was 'plausible' that he would have received some form of relief from removal had his rights not been violated in the removal proceedings." 757 F.3d at 898.

---

[3]The government conceded at the evidentiary hearing that it did not have the documents to prove that Bayardo-Garcia had been convicted of an aggravated felony, which would affect his admissibility.

6

7. We REVERSE the district court's denial of the motion to dismiss the indictment, VACATE the guilty plea, and REMAND for proceedings in accordance with this disposition.

**REVERSED, VACATED, AND REMANDED.**