**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 26, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESUS HERRERA-SALAZAR,

Defendant - Appellant.

No. 24-7029
(D.C. No. 6:23-CR-00056-RAW-1)
(E.D. Okla.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

## I.    INTRODUCTION

In 2020 and again in 2024, the defendant-appellant Jesus Herrera-Salazar was convicted of being found in the United States after a prior deportation in 2015. *See* 8 U.S.C. § 1326(a), (b)(1).[1] He appeals the second of these convictions on double jeopardy and sufficiency grounds.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] 8 U.S.C. § 1326(b)(1) is a penalty provision which authorizes enhanced punishment under certain circumstances. *See Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998).

His double jeopardy claim posits the government may sustain multiple § 1326 convictions, pursuant to a single removal order, only if it also establishes the defendant's removal from the United States after each conviction. Herrera-Salazar also asserts the evidence is insufficient to sustain his second conviction because the government failed to establish his presence outside of the United States subsequent to the first conviction.

The defendant's double jeopardy argument concerns § 1326's allowable unit of prosecution, the measure by which to determine "whether conduct constitutes one or several violations of a single statutory provision." *Callanan v. United States*, 364 U.S. 587, 597 (1961). Because Congress decides the unit of prosecution, *Sanabria v. United States*, 437 U.S. 54, 69-70 (1978), the assessment of the allowable unit of prosecution is a matter of statutory interpretation, *United States v. Rentz*, 777 F.3d 1105, 1108 (10th Cir. 2015) (en banc). The defendant fails to meet his burden of proving a double jeopardy claim, *see United States v. Leal*, 921 F.3d 951, 959-60 (10th Cir. 2019), because his argument is at odds with existing precedent and unsupported by the statutory text, *see Groff v. DeJoy*, 600 U.S. 447, 468 (2023).

Removal after a prior "found in" prosecution is not an element of a subsequent "found in" offense. *Cf. United States v. Caballero-Anaya*, 807 F. App'x 837, 840 (10th Cir. 2020) (unpublished).[2] Because the government does not bear an

---

[2] This unpublished case is cited for its persuasive value. Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

evidentiary burden, Herrera-Salazar's sufficiency argument also falls short.

Accordingly, exercising jurisdiction pursuant to 28 U.S.C. § 1291, the court **affirms**

the judgment of conviction.

## II.    BACKGROUND

Jesus Herrera-Salazar is an undocumented Mexican national. He was deported

from the United States ("the country") on multiple occasions, including in 2015,

when he was removed pursuant to a warrant of removal issued in 2014. Following his

removal in 2015, he reentered the country and was later discovered by a border patrol

agent in Brownsville, Texas, on May 16, 2020.

Herrera-Salazar was charged in the Southern District of Texas with being

found in the United States after deportation, in violation of 8 U.S.C. § 1326(a),

(b)(1). The criminal complaint[3] alleged he was found in the country after having been

---

[3] The criminal complaint charged Herrera-Salazar with the following:

> On or about May 16, 2020, . . . in the Southern District of Texas, . . . the defendant, an alien who had previously been denied admission, excluded, deported, or removed, knowingly and unlawfully was present in the United States having been found [in] Cameron County, Texas, the said defendant having not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States.

ROA Vol. I at 20. Supporting the charge were the following allegations:

> The defendant was encountered by Border Patrol Agents responding to a request for assistance from Brownsville Police Department near Brownsville, Texas on May 16, 2020. The defendant is a citizen and national of Mexico who was previously deported, excluded or removed from the United States on February 12, 2015.

deported in 2015. He pleaded guilty to the charge and was sentenced to 15 months of imprisonment, followed by 2 years of supervised release. A judgment of conviction was entered on December 7, 2020 ("2020 conviction"). Herrera-Salazar was ordered to report to the probation office in the federal district to which he was released if he was not deported upon release from prison.

He served his prison sentence in Post, Texas. The day before he was released, the defendant was asked to provide a United States address so that he could be released there. Herrera-Salazar provided an address in Heavener, Oklahoma, where his wife and children lived.

Upon his release on June 7, 2021, the defendant was taken from prison to a bus station and given a bus ticket from Post to Heavener with instructions to report within 72 hours to the United States Probation Office in Muskogee in the Eastern District of Oklahoma.[4] He did as instructed and began serving his supervised release in Heavener, under a probation officer named Hilary. Hilary visited Herrera-Salazar at his home in Heavener on multiple occasions and told him he was not allowed to leave the Eastern District of Oklahoma during his supervised release.

On April 1, 2022, while on supervised release, the defendant was pulled over for a traffic stop during which a police officer verified his undocumented status.

---

*Id.* In his reply brief, the defendant clarified he was indicted of the offense charged in the criminal complaint. The indictment, however, is not included in the record on appeal.

[4] Heavener is in the Eastern District of Oklahoma.

Herrera-Salazar was arrested and indicted on a single count of violating 8 U.S.C. § 1326(a), (b)(1). Like the criminal complaint leading to his 2020 conviction, the indictment charged him with being found in the United States after his deportation in 2015.[5]

The defendant filed a motion to dismiss the indictment as a double jeopardy violation. He claimed both the indictment filed in the Eastern District of Oklahoma and the criminal complaint filed in the Southern District of Texas charged him with the same crime of being found in the United States following his removal in 2015. He argued he was therefore being prosecuted twice for a single offense, despite already having served his custodial sentence for the 2020 conviction. The motion was denied, allowing the matter to proceed to trial. The district court determined the instant prosecution was not a double jeopardy violation because Herrera-Salazar had committed two separate reentry offenses on two different dates.

During the trial, the government presented testimony from the police officer who identified Herrera-Salazar during the traffic stop. A field officer from the United

---

[5] The indictment charged the defendant with the following:

> On or about April 1, 2022, at or near the City of Heavener, in the Eastern District of Oklahoma, the defendant, **JESUS HERRERA-SALAZAR**, an alien, was found in the United States after having been previously denied admission, excluded, deported, and removed from the United States at or near Hidalgo, Texas on or about February 12, 2015, and not having obtained the express consent of the Attorney General or the Secretary of Homeland Security to reapply for admission to the United States, in violation of Title 8, United States Code, Section 1326(a) and enhanced by Title 8, United States Code, Section 1326(b)(1).

ROA Vol. I at 15.

States Citizenship and Immigration Services also testified, confirming Herrera-Salazar's undocumented status and the details surrounding his removal in 2015. Herrera-Salazar testified in his defense. He admitted he knew his presence in the United States was unlawful and acknowledged his prior reentries. He nevertheless maintained he was not deported from the country after his release from prison following his 2020 conviction. He explained Hilary had instructed him not to leave the Eastern District of Oklahoma.

The jury found Herrera-Salazar guilty of the charged offense, and the district court entered a judgment of conviction on March 21, 2024 ("2024 conviction"). He was sentenced to 21 months of imprisonment followed by 3 years of supervised release.[6] The defendant timely appealed.

## III.    DISCUSSION

Herrera-Salazar raises two issues on appeal. First, he raises a double jeopardy challenge to his 2024 conviction. Next, he contends the government proffered insufficient evidence to sustain his 2024 conviction.

---

[6] In April 2024, Herrera-Salazar was released from prison and deported to Mexico. His removal does not make this appeal moot because Herrera-Salazar challenges his conviction, not his sentence. *See United States v. Sandoval-Enrique*, 870 F.3d 1207, 1210-11 (10th Cir. 2017); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (emphasizing the obligation of a federal appellate court to be satisfied of its own jurisdiction).

### A. Double Jeopardy[7]

Factual findings underlying Herrera-Salazar's double jeopardy claim are reviewed for clear error. *United States v. Rodriguez-Aguirre*, 73 F.3d 1023, 1024-25 (10th Cir. 1996). "The district court's ultimate determination regarding double jeopardy is, however, a question of law we review de novo." *Id.* at 1025. "The defendant bears the burden of proving a claim of double jeopardy." *Id.*

The Double Jeopardy Clause provides "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It safeguards against 1) "a second prosecution for the same offense after acquittal"; 2) "a second prosecution for the same offense after conviction"; and 3) "multiple punishments for the same offense." *United States v. Isabella*, 918 F.3d 816, 846-47 (10th Cir. 2019) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Invoking the second and third protections, Herrera-Salazar claims he was prosecuted, convicted, and punished twice under the same statute, despite having committed a single offense. *See United States v. Mier-Garces*, 967 F.3d 1003, 1012 (10th Cir. 2020) ("[T]he Double Jeopardy Clause [protects] defendants who have been charged

---

[7] Although raised as a double jeopardy challenge, Herrera-Salazar's claim includes arguments that seem to invoke due process concerns. *See United States v. Biswell*, 700 F.2d 1310, 1312 n.1 (10th Cir. 1983) ("As used herein, the due process defense means governmental conduct that is so fundamentally unfair and 'so outrageous that due process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction.'" (quoting *United States v. Russell*, 411 U.S. 423, 431-32 (1973))). Because Herrera-Salazar did not raise a due process claim in the district court or on appeal, however, any such claim is waived. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-29 (10th Cir. 2011).

with violating the same statute more than one time when they have in fact only violated it once." (emphasis omitted)).

"Whether a particular course of conduct involves one or more distinct offenses under the statute depends on . . . congressional choice." *Sanabria*, 437 U.S. at 70 (quotation omitted). Congress defines statutory offenses by prescribing the allowable "unit of prosecution," the measure by which to determine "whether conduct constitutes one or several violations of a single statutory provision." *Callanan*, 364 U.S. at 597.

The defendant theorizes the government may sustain multiple convictions under § 1326(a)(2) based on a single removal order only if it can also establish the offender was removed, i.e. has been outside of the United States, subsequent to each conviction. Because the government did not establish his removal from the country after his 2020 conviction, the defendant argues, his 2024 conviction amounted to a second prosecution and conviction for a single § 1326 offense of being found in the country following his 2015 removal.[8] Thus, Herrera-Salazar contends each allowable unit of § 1326 prosecution must be set apart by the deportee's removal from the United States. In effect, his theory bookends each unit of prosecution with, on one end, an independent predicate reentry, one which is distinct from any prior reentry

---

[8] During the trial, the government did not present any evidence to establish Herrera-Salazar left the United States following his release from prison on June 7, 2021.

that served as the basis for a past § 1326 charge and, on the other, the defendant's removal after the prosecution.

Assessment of the unit of prosecution is a matter of statutory interpretation to determine "the minimum amount of activity a defendant must undertake . . . to commit [an] independent violation." *Rentz*, 777 F.3d at 1109. Statutory interpretation begins with the text. *Tarango-Delgado v. Garland*, 19 F.4th 1233, 1238 (10th Cir. 2021). "[T]he text of a law controls over purported legislative intentions unmoored from any statutory text." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) (quotation omitted).

The Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, subjects to punishment

> any alien who–
>
> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent . . .

§ 1326(a). "The plain language of § 1326(a) establishes that a previously deported alien who illegally enters and remains in the United States can violate the statute at three different points in time, namely, when the alien (1) enters, (2) attempts to enter,

or (3) is at any time found in the United States." *United States v. Rosales-Garay*, 283 F.3d 1200, 1202 (10th Cir. 2002) (quotations omitted).

In both 2020 and 2024, Herrera-Salazar was convicted of being found in the United States after his 2015 removal. The crime of being found in the United States is a continuing offense. *United States v. Villarreal-Ortiz*, 553 F.3d 1326, 1328 (10th Cir. 2009).[9] It "begins when a noncitizen returns to this country after removal and continues until he or she is 'found' in the United States." *United States v. Romero-Lopez*, 981 F.3d 803, 804 (10th Cir. 2020).

The defendant erroneously argues each "found in" offense requires an independent predicate entry which is separate from any other that served as a basis for a prior "found in" prosecution. The proscribed offense under this prong is not necessarily the entry itself, but the unlawful presence of those who are identified in § 1326(a)(1). *See United States v. Bencomo-Castillo*, 176 F.3d 1300, 1303 (10th Cir. 1999) (referring to the "illegality [of the defendant's] presence"); *see also United States v. Santana-Castellano*, 74 F.3d 593, 597 (5th Cir. 1996) (explaining the "found in" provision is intended to punish those who "having reentered[,] remains illegally in this country until his presence is discovered"); *United States v. Are*, 498 F.3d 460, 461-62 (7th Cir. 2007) (referring to the defendant's "illegal presence"); *United States*

---

[9] *United States v. Villarreal-Ortiz* addressed a sentencing challenge, not a double jeopardy claim. *See* 553 F.3d 1326, 1327 (10th Cir. 2009). Nevertheless, this and other cases below, which discuss the scope and nature of the "found in" offense in various contexts, provide helpful guidance in assessing the unit of prosecution and are considered for their persuasive weight.

*v. Clarke*, 312 F.3d 1343, 1347 (11th Cir. 2002) (same). Indeed, other circuits have determined "enters" and "found in" are two distinct substantive offenses, *see United States v. Corrales-Beltran*, 192 F.3d 1311, 1320 (9th Cir. 1999) (collecting cases), and entry is not an element of a "found in" offense, *cf. Caballero-Anaya*, 807 F. App'x at 840-41; *see also United States v. Parga-Rosas*, 238 F.3d 1209, 1213 (9th Cir. 2001) ("[W]e have never suggested that the crime of 'entry' must be charged in order to charge the crime of being 'found in.'").

A "found in" offense almost always begins upon an unlawful reentry into the United States because a deportee—who is presumably outside the country having been removed—must first successfully enter the country in order to be present. *See United States v. Pacheco-Medina*, 212 F.3d 1162, 1166 (9th Cir. 2000) ("[I]t is apodictic that [the defendant] cannot have been found in a place he did not succeed in entering."); *United States v. Ayon-Brito*, 981 F.3d 265, 270 (4th Cir. 2020) ("[A]n entry into the United States is required before a person is found in the United States." (quotation omitted)). Herrera-Salazar's 2024 conviction, however, is distinguishable from the typical reentry offense because, following his 2020 conviction, he was not deported. Because he was not deported, he did not need to reenter the country to maintain his unlawful presence therein. *Cf. United States v. Pina-Jaime*, 332 F.3d 609, 612 (9th Cir. 2003) ("It is [the defendant's] volitional stay in the United States, following termination of the specified term of his parole, of which he had knowledge, that distinguishes this case from those in which there was an illegal entry *ab initio*."). These circumstances notwithstanding, Herrera-Salazar is not beyond the scope of

11

§ 1326 because he was removed in 2015. The statute subjects to punishment those who have "been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding" "at any time" they are found in the United States. 8 U.S.C. § 1326(a)(1), (2).[10] The statute does not provide exceptions for those prosecuted multiple times pursuant to a single removal order. Neither does its plain text provide any indication that a "found in" crime must begin with an independent predicate reentry.

Herrera-Salazar's argument that § 1326's unit of prosecution must be separated with the removal of the noncitizen fares no better. The "found in" offense is completed when the defendant is "found." *Villarreal-Ortiz*, 553 F.3d at 1330. An individual is "found" for the purposes of § 1326 when the government, "through the exercise of diligence typical of law enforcement," becomes aware of the illegality of their presence. *Id.* The "found in" offense is therefore completed upon detection by law enforcement, not upon the offender's removal from the country. *Id.* In sum, Herrera-Salazar's unit-of-prosecution theory lacks textual support and is at odds with this court's precedent.

The offense of the defendant's 2020 conviction was completed on May 16, 2020, when a border patrol agent discovered him in Texas. *Rosales-Garay*, 283 F.3d at 1202 (holding the "'found in' language of § 1326(a) is synonymous with

---

[10] Although exceptions are identified in 8 U.S.C. § 1326(a)(2)(A)-(B), neither are applicable here.

'discovered in'"). Some time thereafter, Herrera-Salazar began committing another offense by continuing his unlawful presence in the United States. *See United States v. Salazar-Robles*, 207 F.3d 648, 650 (9th Cir. 2000) (explaining "being found" is a "passive state, not requiring proof of a voluntary act"). It need not be determined precisely when Herrera-Salazar began committing the new offense because it is clear on April 1, 2022, when an officer verified his undocumented status, he had completed a new violation. The subsequent charge brought by the government was therefore based on an independent criminal offense. The prosecution, conviction, and punishment for his conduct on April 1, 2022, was not a double jeopardy violation. *See Rentz*, 777 F.3d at 1109.

Herrera-Salazar raises two additional arguments to the contrary. First, he asserts that affirming his 2024 conviction would embrace an absurd interpretation of the statute. In a separate but related argument, he asks the court to adopt the holding of *United States v. Meza-Villarello*, 602 F.2d 209 (9th Cir. 1979) (per curiam).

The defendant's absurdity argument posits that if a single reentry can be prosecuted multiple times without removal subsequent to each conviction, the government, without running afoul of double jeopardy, could have arrested and charged him on a daily basis following his 2022 traffic stop. He argues Congress could not have intended such a nonsensical result, especially when, as here, the defendant was on supervised release—requiring his continued presence in the United States—when he was found in 2022.

13

There is no need to "address whether repeated prosecutions for daily offenses may impinge upon the Double Jeopardy Clause in some circumstances" because Herrera-Salazar himself was not so subjected. *United States v. Paternostro*, 966 F.2d 907, 911 (5th Cir. 1992). Moreover, in raising an absurdity argument, Herrera-Salazar espouses an illogical statutory reading of his own. His rendition of the statute would shield in perpetuity, those who remain in the United States following a § 1326 conviction for as long as they are able to successfully evade, resist, or conceal their removal. *Cf. United States v. Morgan*, 380 F.3d 698, 702-03 (2d Cir. 2004) (concluding Congress could not have intended to shield from prosecution those who repeatedly and surreptitiously reenter but conceal their reentry or remain undiscovered). His interpretation is at odds with the language of § 1326(a)(2) which subjects to prosecution persons identified in § 1326(a)(1) "at any time [they are] found in the United States." *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("[Courts] may not replace the actual [statutory] text with speculation as to Congress'[s] intent." (quotation omitted)).

"The disposition required by the text here, though strict, is not absurd." *See Dodd v. United States*, 545 U.S. 353, 359 (2005). To sustain his conviction, the government needed only to establish Herrera-Salazar voluntarily returned to the country following his removal; it is irrelevant whether his "continued presence in the United States was voluntary at the moment of discovery." *United States v. Hernandez-Noriega*, 544 F.3d 1141, 1143 (10th Cir. 2008) (quotation omitted). Herrera-Salazar does not argue his reentry into the United States after his 2015

14

removal was involuntary. As a double jeopardy matter, the terms of Herrera-Salazar's supervised release do not affect the validity of his 2024 conviction.

Herrera-Salazar's second argument is based on Ninth Circuit precedent. In *Meza-Villarello*, the defendant appealed the denial of jury instructions that were "tendered upon a double-jeopardy theory." 602 F.2d at 210. The relevant facts of *Meza-Villarello* bear similarity to the case at bar:

> The government's proof had established that [the defendant, Leopoldo Meza-Villarello] was deported in 1971; that in 1975 he was found in the United States and convicted of violating section 1326; and that he was arrested in 1978 [in the United States]. Following his 1975 conviction, the defendant served a prison sentence. There [was] no proof that he was again deported. The government proved that after 1971 the defendant had not received permission to enter the United States.

*Id.* In the district court, Meza-Villarello requested jury instructions which would direct the jury "it could not return a verdict of guilty unless it found beyond a reasonable doubt that the defendant had left the United States . . . subsequent to his 1975 sentencing." *Id.* The defendant argued "this instruction was necessary because unless [he] had officially been removed from the United States after [his 1975 offense,] his presence in the country was merely the same presence for which had been punished." *Id.* The district court rejected the instruction and Meza-Villarello was convicted. *Id.*

Before the Ninth Circuit, Meza-Villarello again argued he was being prosecuted twice for the same offense of being found in the country after his 1971 removal. *See id.* The Ninth Circuit first clarified it did not believe "Congress intended to require a separate official or formal act of deportation to precede each

15

repeated violation of section 1326." *Id.* at 211. It then added "[t]o avoid an unfair prosecution following an arrest at the prison gates, however, the government should be required to prove that the defendant had been outside the United States after each conviction before again prosecuting him for being 'found' within the United States in violation of 8 U.S.C. § 1326" ("the Ninth Circuit removal rule"). *Id.* In the end, Meza-Villarello's conviction was affirmed because there was sufficient evidence for a reasonable jury to find the defendant had been outside of the United States after his 1975 offense, but before his 1978 arrest. *Id.*

Herrera-Salazar asks the court to apply the Ninth Circuit removal rule to resolve his double jeopardy claim. Yet, he fails to clarify whether the Ninth Circuit removal rule concerns double jeopardy at all. As the defendant recognizes, *Meza-Villarello* ultimately did not address double jeopardy questions. *Id.* at 211. *United States v. Sanchez-Aguilar* offers conflicting accounts of the nature of the Ninth Circuit removal rule. *Compare* 719 F.3d 1108, 1110 (9th Cir. 2013) (indicating the Ninth Circuit removal rule was "grounded in double jeopardy concerns") *with id.* at 1111 n.1 (holding "no double jeopardy concerns were raised" in *Meza-Villarello* and suggesting the appeal was resolved on an evidentiary basis). If anything, the Ninth Circuit removal rule seemed to have been intended to prevent unfair prosecutions, not avoid double jeopardy violations. *See* 602 F.2d at 211; *see also Sanchez-Aguilar*, 719 F.3d at 1110 (holding the Ninth Circuit removal rule was adopted to avoid the "specter" of unfair prosecution); *supra* note 1 (noting no due process claim is before this court on appeal).

In any event, the rationale behind the Ninth Circuit removal rule cannot be squared with precedent which binds this court. This is a unit of prosecution case. It involves discerning congressional intent by focusing on statutory text. *See Sanabria*, 437 U.S. at 69 ("It is Congress, and not the prosecution, which establishes and defines offenses."); *Rentz*, 777 F.3d. at 1109. In contrast, the Ninth Circuit observed Meza-Villarello's double jeopardy argument was "not supported by the words of the statute or by its history." *Meza-Villarello*, 602 F.2d at 210. The Ninth Circuit further explained it did not "believe Congress intended to require a separate official or formal act of deportation to precede each repeated violation of section 1326." *Id.* at 211. These disparities undermine the persuasive weight of the Ninth Circuit precedent and militate against its application to this case. *See Bacote v. Fed. Bureau of Prisons*, 119 F.4th 808, 814 (10th Cir. 2024) ("As a general principle, opinions handed down in one circuit do not bind other circuit courts.").

## B. Sufficiency of the Evidence

Herrera-Salazar next argues the evidence was insufficient to sustain his conviction.[11] Sufficiency of evidence is reviewed de novo, "considering the evidence in the light most favorable to the government to determine whether any rational jury could have found guilt beyond a reasonable doubt." *United States v. Griffith*, 928 F.3d 855, 868 (10th Cir. 2019) (quotation omitted). The court considers "all of the

---

[11] The district court denied the defendant's motion for judgment of acquittal after the government's case-in-chief; a renewed motion, raised after the defense rested, was also denied.

17

evidence, direct and circumstantial, along with reasonable inferences," but does not "weigh the evidence or consider the relative credibility of witnesses." *Id.* at 868-69 (quotation omitted). This is a very deferential review and reversal is warranted "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 869 (quotation omitted).

The defendant contends the evidence was insufficient to sustain his conviction because the government failed to establish beyond a reasonable doubt his removal from and reentry into the United States following his 2020 conviction. His argument treats a defendant's removal following a prior § 1326 conviction as an essential element of subsequent § 1326 convictions. *See id.*

To sustain the defendant's conviction, the government must establish the defendant (1) is an alien; (2) had been removed from the country; (3) was thereafter found in the United States; and (4) lacked the permission of the Attorney General. *Caballero-Anaya*, 807 F. App'x at 840; *see* Tenth Circuit Pattern Criminal Jury Instruction 2.05 (2025 ed.); *see also Ayon-Brito*, 981 F.3d at 269; *United States v. Valdiviez-Garza*, 669 F.3d 1199, 1201 (11th Cir. 2012). Ahead of the trial, the parties stipulated to the following:

1. Defendant, Jesus Herrera-Salazar, was an alien at all times relevant.

2. Defendant was previously removed from the United States at or near Hidalgo, Texas on or about February 12, 2015.

3. Defendant entered the United States knowingly after February 12, 2015.

4. Defendant had not received the consent of the proper legal authority to reapply for admission to the United States

18

ROA Vol. I at 98. Accordingly, the government needed only to proffer evidence to establish the third element—that Herrera-Salazar was found in the United States after his 2015 removal. Based on the testimony of government witnesses, a reasonable jury could have found the third element satisfied. *See Villarreal-Ortiz*, 553 F.3d at 1329 (explaining a noncitizen is "found" when the government has knowledge of the illegality of their presence). His sufficiency argument falls short.

## IV.    CONCLUSION

Herrera-Salazar fails to establish a double jeopardy violation or insufficiency of the evidence. The district court's judgment of conviction is **affirmed**.

Entered for the Court

Michael R. Murphy
Circuit Judge